IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| D.S., by and through his parents, Clarenore and Greg S. <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION, STATE OF HAWAII, <br><br> Defendant. | Civ. No. 10-00053 BMK <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT |

ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT

Before the Court is Plaintiff D.S.'s motion for stay put (Doc. # 37.) After careful consideration of the motion, the supporting and opposing memoranda, the attached documentation, and the arguments of counsel at the hearing, the Court GRANTS D.S.'s motion for stay put.

BACKGROUND

The factual and procedural background of this case is summarized in this Court's April 1, 2011, order affirming in part and reversing in part the Hearings Officer's decision (Doc. # 29.) As summarized in that order, D.S. is a twelve year old boy with autism eligible for services under the Individuals with Disabilities Education Act ("IDEA"). After D.S. was in second grade, his parents

enrolled him at Loveland Academy ("Loveland") due to safety concerns. (Id. at 4.) In 2007, D.S.'s parents filed a request for an impartial due process hearing. On July 3, 2008, D.S.'s parents and the DOE entered into a settlement agreement, in which the DOE agreed to pay for D.S.'s tuition and related services at Loveland for the 2007-2008 school year. (Id. at 5.) The DOE then requested dates and times to observe D.S. in order to prepare his 2009 IEP. (Id. at 6-7.) D.S.'s parents would not allow the DOE to observe D.S. until the DOE was current in its payments to Loveland. (Id.)

On February 18, 2009, the DOE held an IEP meeting and developed an IEP for D.S. ("the February 2009 IEP"), which was largely based on 2008 materials (Id. at 9.) The DOE requested more information from D.S.'s parents in preparation for an April 2009 IEP meeting, but D.S.'s parents did not respond to the DOE's request. (Id. at 11.) The April 2009 IEP meeting was held, and no changes were made to the IEP. (Id. at 12.)

D.S.'s parents expressed concerns regarding the April 2009 IEP. On July 16, 2009, D.S.'s parents filed a request for an impartial due process hearing. (Id. at 15.)

On December 28, 2009, the Hearings Officer issued his decision, concluding that D.S. had not proved that the February 2009 and April 2009 IEPs

("2009 IEPs") were procedurally or substantively flawed.  (Id. at 16.)  D.S. appealed the decision to this Court, and this Court concluded that the 2009 IEPs denied D.S. a Free and Appropriate Public Education ("FAPE").  (Id. at 32.)  The Court also concluded that D.S. was entitled to reimbursement for the 2008-2009 and 2009-2010 school years.  (Id. at 33.)  However, the Court reduced the amount of reimbursement by thirty percent to account for the parents' refusal to schedule observations with the DOE.  (Id. at 35-36.)  The Court remanded the case to the Hearings Officer for a determination of the amount owed to Plaintiff.  (Id. at 38.)

On May 17, 2012, D.S. filed the instant motion for stay put, asserting that the DOE was required to make stay put payments through the pendency of the remand proceedings.  (Doc. #37 at 3.)  D.S. prayed for an order stating "that the stay-put payments and invoices owed to Plaintiff at Loveland Academy should be included in the final accounting pending the conclusion of this case or in the alternative order that the Defendant DOE owes Plaintiff $201,510.62 in arrearages . . . ."  (Id.)  The DOE asserts that:  1) stay put does not apply during the pendency of the remand; and 2) "principles of equity" allow the DOE to withhold stay put payments until the overage from the 2008-2009 and 2009-2010 school years has been recouped.  (Doc. # 40 at 4-7.)  As discussed below, the Court is not persuaded by the DOE's arguments, and GRANTS Plaintiff's motion for stay put.

3

## DISCUSSION

Section 1415(j) of the IDEA provides that "<u>during the pendency of any proceedings conducted pursuant to this section</u>, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the <u>then-current educational placement</u> of the child . . . ." (Emphasis added.) The "Ninth Circuit has interpreted the stay put provision as requiring a school district to fund the child's 'current educational placement' at a private school, when applicable, during the pendency of any administrative or judicial proceedings under the IDEA." <u>Department of Educ., State of Hawaii v. C.B. ex rel. Donna B.</u>, 2012 WL 1081073, at *4 (D. Haw. 2012). "Courts have generally interpreted the phrase to mean the placement set forth in the child's last implemented IEP." <u>L.M. v. Capistrano Unified School Dist.</u>, 556 F.3d 900, 902 (9th Cir. 2009). Additionally, if a Court or agency has ruled in favor of the parents' private placement, that placement may become the current educational placement for stay put purposes. <u>Id.</u> ("Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal."). As discussed below, the DOE is responsible for D.S.'s private placement through the pendency of the administrative proceedings because it has not disputed that

Loveland is his current educational placement, and the due process hearing is on-going.

I.   <u>D.S. Is Entitled To Stay Put From the End of the 2010 School Year to April 1, 2011.</u>

The DOE does not dispute that Loveland was D.S.'s educational placement throughout these proceedings. Additionally, the DOE does not argue that stay put did not apply during the period leading up to the Court's April 1, 2011 order. Because stay put applies during appeals to this Court, the DOE owed stay put until the Court's April 1, 2010 decision.[1] See 20 U.S.C. § 1415(j) (stay put applies during "any proceedings conducted pursuant to this section"); 20 U.S.C. § 1415(i)(2) (authorizing plaintiffs to bring a civil action in the district court).

II.  <u>D.S. Is Entitled To Stay Put During the Remand Proceedings.</u>

D.S. asserts that the DOE has not paid Loveland Academy for stay put during the pendency of the remand proceedings. (Doc. # 37 at 3.) The DOE asserts that it is not required to pay for D.S.'s placement because the Court did not

---

[1] In <u>K.D. v. Hawaii Dept. of Education</u>, the Ninth Circuit concluded that the DOE was not obligated to pay for stay put when the placement at Loveland resulted from a temporary settlement. The settlement only allowed tuition reimbursement for one year and contemplated temporary placement at Loveland. 665 F.3d 1110, 1120 (9th Cir. 2011). In light of <u>K.D.</u>, it is questionable whether stay put applied prior to the Court's April 1, 2011 decision, because D.S. was at Loveland as a result of a one year settlement. However, because the DOE has not raised this issue or produced the settlement agreement, it is unnecessary for the Court to address this issue.

remand the case on substantive IDEA issues. (Doc. # 40 at 5.) The Court concludes that the DOE is required to maintain D.S.'s placement because the remand proceedings are proceedings identified in 20 U.S.C. § 1415.

### A. Current Educational Placement

As discussed above, the stay put provision of the IDEA requires the DOE to maintain D.S.'s "current educational placement" during the pendency of any proceedings conducted under 20 U.S.C. § 1415. 20 U.S.C. § 1415(j). The DOE does not dispute that Loveland was D.S.'s current educational placement after the Court's April 1, 2010 decision. Additionally, the Ninth Circuit has held that a favorable decision by a district court can create an educational placement. See L.M., 556 F.3d at 902. The Court's April 1 order found that the DOE denied D.S. a FAPE and awarded reimbursement in part because it was undisputed that Loveland was an appropriate placement. (Doc. # 29 at 32-33.) Thus, Loveland is the "current educational placement" during the remand proceedings.

### B. Proceeding Under 20 U.S.C. § 1415

The parties dispute whether the remand in the instant case is a proceeding under 20 U.S.C. § 1415. "Four kinds of proceedings are mentioned in § 1415: (1) mediation; (2) due process hearings; (3) state administrative review; and (4) 'a civil action' begun by a complaint under the IDEA . . . ." Joshua A. v.

Rocklin Unified School Dist., 559 F.3d 1036, 1038 (9th Cir. 2009) (citing 20 U.S.C. § 1415(e), (f), (g), & (i)).

The DOE correctly observes that the Court only remanded the case as to the amount of D.S.'s reimbursement. (Doc. # 27 at 38.) The parties have not produced any case law evaluating whether a remand based solely on the amount of tuition reimbursement requires the DOE to continue to pay for stay put.

In Aliah K. ex rel. Loretta M. v. Hawaii Dept. of Educ., 788 F. Supp.2d 1176 (D. Haw. 2011), the Court decided a similar stay put issue. In that case, the plaintiff filed a request for impartial due process hearing, and the hearings officer ruled that the DOE had not denied her a FAPE. Id. at 1180. The plaintiff appealed to the district court, and it affirmed the hearings officer's decision that the DOE had not denied the plaintiff a FAPE, but remanded the case to determine whether the DOE violated stay put by failing to pay for skills trainer services for a one month period. Id. On remand, the case was never calendared. Id. at 1181. Over three years later, the plaintiff filed an action seeking stay put relief during the pending remand proceedings. Id. at 1181-82, 1189. Plaintiff filed a motion for a temporary restraining order and preliminary injunction, asserting in part that she was entitled to stay put because the remand proceedings were on-going. Id. at 1182. The DOE asserted that stay put did not apply because "there were no

outstanding substantive challenges to [plaintiff's] placement." Id. at 1184.

In evaluating the possibility of success on the merits, the Court held that "[i]nsofar as the L.M. remand is still pending, and the L.M. Remand Order is not an appealable final order, the request for due process made in 2005 is still pending, requiring the DOE to pay for [plaintiff]'s placement at Loveland under stay put." Id. at 1189 (emphasis added).  The Court held that the threshold issue was whether the remand order was appealable, because once plaintiffs had failed to appeal, stay put would no longer apply.  Id. at 1190.

The Court applied the following three factor test to determine if the remand order was a final appealable order:

> A remand order will be considered final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable.

Id. at 1190 (quoting Pit River Tribe v. U.S. Forest Service, 615 F.3d 1069, 1075 (9th Cir. 2010) (emphasis added).

The Court concluded that the remand order did not meet the second or third factor, and therefore concluded that plaintiff was "likely to prevail on the merits of Count I, to the extent that Count I seeks a determination that L.M. is an open proceeding and that stay put applies." Id. at 1191.

8

Although Aliah K. is factually distinguishable and the Court ultimately denied the plaintiff's motion for preliminary injunction after consideration of the remaining factors, this Court applies its reasoning that the due process proceedings have not ended unless the three factor test noted above is met. Based on that test, the Court concludes that the IDEA proceedings in this case are on-going because the third factor is not met.  Even if the Court's April 1, 2011 order is not immediately reviewable, both parties would still have an opportunity to seek review after the conclusion of the remand proceedings.  See Aliah K., 788 F. Supp.2d at 1191 ("even if immediate review of the L.M. Remand Order were unavailable, both parties would have the opportunity to seek review after the conclusion of the remand proceedings").  Therefore, the Court concludes that the April 1 order was not a final order, the litigation regarding D.S.'s due process hearing is an on-going proceeding, and that D.S. is entitled to stay put during the pendency of that proceeding.  See 34 CFR § 300.518 ("[D]uring the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.") (emphasis added.)

The DOE asserts that stay put only applies to remand proceedings if

they occur "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child . . . ." (Quoting 20 U.S.C. § 1415(b)(6)(A)).  However, this section pertains to the requirements to file a complaint with the administrative agency.  It does not identify prerequisites to stay put relief during a remand, and the DOE has not cited to any authority indicating that the IDEA requires a "substantive remand" for a student to be entitled to stay put relief.[2]  Because the litigation regarding the due process hearing is on-going, D.S. is entitled to stay put relief until those proceedings are concluded.

III.   The Hearings Officer May Take Into Account the DOE's Failure to Pay Stay Put on Remand.

The DOE asserts that assuming "future payments are required to Loveland on [D.S.]'s behalf, those payments should not commence until the DOE has recouped the amount overpaid in full." (Doc. # 40 at 6.)  The Court rejects this argument because it concludes that there is not currently an overage.  D.S. attached the declaration of Maurolyn Gurtiza to its motion.  She avers that the DOE owes Loveland $201,510.62 in past payments.  (Doc. # 37 Ex. 1.)  Her calculations factored in the Court's thirty percent reduction for the 2008-2009 and 2009-2010

---

[2]   The DOE has cited to cases discussing the stay put provision, but those cases do not indicate that stay put only applies when the student's educational placement is at issue.  See K.D. ex rel. C.L. v. State of Hawaii Department of Educ., F.3d 1110, 1117 (9th Cir. 2011).

school years. (Id. at ¶ 4.) Although the DOE asserts that Loveland still owes it $75,169.55, the billing summaries attached to D.S.'s motion establish that the DOE owes D.S. stay put totaling $201,510.62 after subtracting the thirty percent reduction.

Furthermore, to the extent that the DOE asserts that the thirty percent reduction should apply to the stay put payments, the Court is not persuaded. While the DOE asserts that this Court previously reduced the amount owed to D.S. by thirty percent, the Court's reduction only applied to the 2008-2009 and 2009-2010 school years. Thus, the DOE is responsible for the entire Loveland tuition for all periods covered by stay put except for the 2008-2009 and 2009-2010 school years.

Based on the foregoing, the Court orders the DOE to pay stay put in the amount of $201,510.62. Additionally, the DOE is required to maintain D.S.'s placement at Loveland until the remand proceedings have concluded. Finally, in the event that the DOE fails to make stay put payments, the Hearings Officer may award D.S. amounts owed for past due stay put.

## CONCLUSION

For the foregoing reasons, the Court GRANTS D.S.'s motion for stay put. The Court DIRECTS the Clerk of Court to open this case, and to enter a stay to permit the administrative proceedings to occur as contemplated in the Court's

April 1, 2010 order.

DATED: Honolulu, Hawaii, July 31, 2012.

IT IS SO ORDERED.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

D.S. v. Dept. of Educ., State of Hawaii, Civ. No. 10-00053 BMK, ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT